338 So.2d 1287 (1976)
HOME VOLKSWAGEN, INC., a Florida Corporation, Petitioner,
v.
John D. CALVIN, Director of the Division of Motor Vehicles of the Department of Highway Safety and Motor Vehicles of the State of Florida, et al., Respondents.
No. AA-447.
District Court of Appeal of Florida, First District.
October 6, 1976.
Rehearing Denied November 22, 1976.
John W. Zeder, Paul & Thompson, Miami, for petitioner.
Edwin E. Strickland, Gen. Counsel, Tallahassee, and Enoch J. Whitney, Asst. Gen. Counsel, Dept. of Hwy. Safety and Motor Vehicles, for respondent John D. Calvin.
Karl J. Leib, Jr., Quinton, Leib & Lummus, Miami, for intervening respondents Bob Houston Motors, Inc., Rinehart Volkswagen, Inc., and Hialeah-Springs Motors.
J. Robert McClure, Jr., McClure, Wigginton, Campbell & Owen, Tallahassee, for amicus curiae Fla. Automobile Dealers Association.
McCORD, Judge.
This is a petition for review of an order of respondent John D. Calvin, Director of the Division of Motor Vehicles, denying an application for franchise for a motor vehicle dealer license on the ground that petitioner failed to show that the existing dealers were not complying with their franchise *1288 agreements or had failed to show that the existing dealers were not providing adequate representation in the territory pursuant to § 320.642, Fla. Stat. (1973).
This proceeding began when on March 30, 1973, Volkswagen South, Inc., a licensed motor vehicle dealer in Miami filed an application for a "satellite" (supplemental) license for an additional place of business in the Homestead area. During 1972, the applicant had communicated informally with George Mortimer, respondent's dealer license supervisor, regarding the requirements relating to licensing of motor vehicle dealers. In January of 1973, the four Volkswagen dealers in the Miami area (including all three intervenors) wrote Mortimer that they would have no protest to the satellite dealership in the Homestead area. On receipt of the application, Mortimer wrote Charles Goldstein of the applicant company that he had received the application and the letters of "no protest" and "upon completion of the building and final approval by the distributor, there appears to be no reason why this office could not issue your license." He further stated that, "A positive position will be maintained in this matter as long as the letters of no protest remain in force." Later, applicant requested clarification from respondent as to what might cause the "no protest" letters to no longer remain in force, and it received a letter from Mr. Pelham, Chief of the Licensing Enforcement Bureau, dated April 17, 1973, providing as follows:
"Pursuant [to] your request, I have consulted Director John Calvin in regard to the continuing validity of letters of consent to operation of the captioned additional dealer lot by dealers in the surrounding territory.
Director Calvin has advised that these letters of `no protest' would still remain in force as submitted after completion of the building and final approval by the distributor and this office of your business location."
Later, by letter of July 19, 1974, Henry C. Noxtine, then dealer license supervisor of respondent, advised applicant that the Department was closing its files and refunding the $5 application fee "... due to nothing having transpired since [April 1973], as to completion of the building and action on the application, ..." Although it was not reflected in the Department's files or otherwise known by the Department, applicant had been engaging in substantial activity and expending money toward construction of new facilities at the satellite location since April 1973. Upon advising respondent of these activities, Noxtine, by his letter of August 13, 1974, to the applicant, stated as follows:
"Be advised that after further review of this matter we are holding your application in our pending files and anticipate an early completion of all requirements including the location. At which time our field representative will inspect and approve the location so that license can be issued."
Thereafter, applicant had final building plans prepared and a ground breaking for the satellite location took place in August 1974. Immediately thereafter, O.J. Mitchell, Inspector, District 10, of respondent raised certain questions as to the applicant's proposed operation in a letter to applicant of August 28, 1974, which stated in part as follows:
"Request, in writing, reasons for the use of the name `Home Volkswagen' in these [newspaper articles dated August 26, 1974] which is different from your original application for an additional location (only) of Volkswagen South, Inc. If you have changed the original concept of your application it will be necessary to re-file new papers again from the very beginning and at the same time cancel the pending application now on file with the Division of Motor Vehicles in Tallahassee."
Thereafter, telephone conversations ensued between applicant and representatives of respondent and on September 17, 1974, applicant wrote the following letter to respondent:
"Dear Mr. Calvin:
This will confirm our telephone discussion on Friday. Volkswagen South intends to operate its Homestead satellite through a wholly-owned subsidiary. You advised me this was agreeable to your *1289 office provided it was agreeable to Volkswagen. My client has confirmed that this arrangement is agreeable with Volkswagen and therefore we will proceed on this basis.
Sincerely,"
Further communications with respondent resulted in the filing of an application for license by petitioner, Home Volkswagen, Inc., a wholly-owned subsidiary of the original applicant, Volkswagen South, Inc. The application was accompanied by a cover letter to respondent stating as follows:
"This application [of Home Volkswagen] is being submitted to you on your assurance that it will be merely a continuation of the application already filed for this location by Volkswagen South, Inc., that no new letters of consent will be required from dealers in the surrounding territory, and that the existing letters of consent for the Homestead location, together with the remainder of the present file will be simply transferred to this file and will be handled as a continuation of the previous file."
Then in March 1975, Director Calvin advised petitioner by telephone that the application was in order but that a certificate from the Secretary of State confirming due incorporation and good standing of Home Volkswagen, Inc., was required. Such certificate was furnished to respondent and final steps were taken by petitioner to solicit bids for construction of the facility. Then, by letter of May 23, 1975, Enoch J. Whitney, Assistant General Counsel of respondent, wrote a letter to petitioner advising that it would be necessary that its application be treated as a new application because of the withdrawal of previous letters of "no protest" from other Volkswagen dealers in the territory; because there had been no "substantial beginning" and construction of the physical plant and no extension of the distributor's letters of intent. Whitney further stated that upon receipt of a letter of intent from the distributor (Volkswagen Southeastern Distributor, Inc.), renewing approval of establishment of the proposed dealership, the matter would be set for hearing upon the new application. Petitioner then forwarded to respondent written confirmation from the distributor stating that the letter of intent was still in effect and requested that Mr. Whitney withdraw his previous letter. The only response was an order setting the application for hearing pursuant to § 320.642, Fla. Stat.
It is apparent from the record that Volkswagen South, Inc., and the distributor, Volkswagen Southeastern Distributor, Inc., intended from the beginning that the application would result in a new independent dealership rather than a supplemental license for an additional place of business for Volkswagen South, Inc. This is clear from a letter dated December 13, 1971, from Volkswagen Southeastern Distributor, Inc., to Charles Goldstein of Volkswagen South, Inc., stating in pertinent part as follows:
"This letter constitutes approval of your establishing an extension of your existing dealership in the town of Homestead, Florida, contingent on the following requirements:
* * * * * *
"The condensed content of the program is that after you have had reasonable experience in your satellite dealership, and the operating results reach a sales and profit point that would qualify it as an independent dealership, the assets would be sold to a corporation, to be formed with you as the major investor."
Then follows a statement as to how Mr. Goldstein might acquire 100% of the new corporation stock. Then the letter adds:
"Of course, you also have an option to sell outright the assets of your satellite operation to a qualified purchaser that is approved by Volkswagen Southeastern Distributor, Inc.
Please acknowledge your understanding of the above by signing below."
Mr. Goldstein's name is then signed below in the space provided.
Respondent was correct in construing the application filed by Home Volkswagen, Inc., as a new application to be processed under § 320.642, Fla. Stat., rather *1290 than an application for supplemental license by Volkswagen South, Inc., to be processed under § 320.27(5), Florida Statutes. Although Home Volkswagen, Inc., is at present a wholly owned subsidiary of Volkswagen South, Inc., it is a separate corporation and its ownership could be readily changed (as pointed out by Goldstein's previously quoted letter of December 13, 1971).
It was certainly not the intent of the legislature that the provisions of § 320.642, Fla. Stat., could be circumvented by construing § 320.27(5), Florida Statutes, to allow issuance under it of a supplemental license to a corporation other than the original licensee. Such would obviously defeat the purpose of the statute  to protect automobile dealers against unfair treatment by the manufacturer. See Plantation Datsun, Inc. v. Calvin, 275 So.2d 26 (Fla.App. 1st 1973).
Petitioner contends that respondent is now estopped to deny the issuance of the license because of its efforts and expenditures in reliance upon respondent's representations that the application was a proper one under § 320.27(5), Florida Statutes. These representations, however, with one exception, were made in relation to the application of the existing licensed dealer, Volkswagen South, Inc., and not Home Volkswagen, Inc. The one exception was the March 1975 telephone statement of Director Calvin to petitioner that the application was in order after respondent had been advised that the application was submitted on the Director's assurance that it would be merely a continuation of the application already filed by Volkswagen South, Inc. This statement of Director Calvin was made, however, after the expenditures on which petitioner relies for estoppel had been made and the statement was repudiated by Mr. Whitney's letter of May 23, 1975. Under these circumstances, the state is not estopped to deny the application of Home Volkswagen, Inc., and the record made at the hearing on the application does not show that the existing dealers were not complying with their franchise agreements or that they had failed to provide adequate representation to the licensee in the territory as required by § 320.642, Fla. Stat.
AFFIRMED.
RAWLS, Acting C.J., and SMITH, J., concur.

ON PETITION FOR REHEARING
McCORD, Judge.
In its petition for rehearing, petitioner contends that our opinion was in error in characterizing the original application of Volkswagen South, Inc., as an application under § 320.27(5), Fla. Stat. It contends that the application was filed under § 320.642, Fla. Stat., and that respondent Director did not ever characterize it as an application under § 320.27(5). It argues that since the existing dealers in the territory had filed letters of no protest to the original application and respondent Director had subsequently approved amendment of it to change it from an application of Volkswagen South, Inc., to one for a new corporation, Home Volkswagen, Inc., a wholly-owned subsidiary of the original applicant, the withdrawal by the existing dealers in the territory of their letters of no protest should not have been allowed by respondent Director; that this court should rule that respondent Director is now estopped to deny issuance of the license to the new corporation in view of its expenditures made in reliance upon respondent Director's tacit approval of the amendment to the original application.
§ 320.27 relates to application for motor vehicle dealer licenses. It pertains to new motor vehicle license applications and subsection (5) thereof applies to supplemental licenses. Subsection (5) authorizes issuance of a supplemental license to a previously licensed dealer for an additional place of business not contiguous to the premises for which the original license was issued.
§ 320.642 states as follows in relation to denial of a motor vehicle dealer license:
"The department shall deny an application for a motor vehicle dealer license in any community or territory where the *1291 licensee's presently licensed franchised motor vehicle dealer or dealers have complied with licensee's agreements and are providing adequate representation in the community or territory for such licensee. The burden of proof in showing inadequate representation shall be on the licensee."
In spite of petitioner's contention that the original application was not for a supplemental license under § 320.27(5), it bore all of the earmarks of a supplemental license. The operation proposed to be carried on under it was characterized by petitioner as "a branch of an existing dealer where a skeleton crew would be kept to provide sales and service to an area which it considered it was not servicing properly because of the distance involved." It is obvious that the letters of no protest of the other dealers in the territory were based upon the original application by a dealer already licensed in the territory and not upon an application for an additional license of a new legal entity in the same territory. Respondent's allowance of withdrawal of the letters of no protest was proper in view of the changed nature of the application. We find no merit to petitioner's estoppel argument as it relates to the amended application, and we, therefore, adhere to our previous opinion with the exception of the following modification. In view of the circumstances related in our previous opinion and this opinion on petition for rehearing, our affirmance is without prejudice to further amendment of the application to reconvert it into an application of Volkswagen South, Inc., for a supplemental license under § 320.27(5), Fla. Stat., provided such amendment is made within thirty (30) days from the date hereof. Should such occur, respondent is directed to issue supplemental license to Volkswagen South, Inc.
RAWLS, Acting C.J., and SMITH, J. concur.